UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AURORA FIGUEROA, on her own behalf, and as successor in interest to MARTIN FIGUEROA, and LIZETTE FIGUEROA, on her own behalf,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF FRESNO, a municipal corporation, OFFICER ROBERT ALVAREZ, individually and in his capacity as a police officer for the CITY OF FRESNO, and OFFICER MIKAL CLEMENT, individually and in his capacity as a police officer for the CITY OF FRESNO,<br><br>Defendants. | No. 1:15-cv-00349-DAD-BAM<br><br>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. No. 60) |

This action arises out of the shooting of Martin Figueroa on May 20, 2014 by defendant officers Robert Alvarez and Mikal Clement of the Fresno Police Department. Plaintiffs' operative first amended complaint ("FAC"), filed on March 22, 2016, alleges six causes of action: (1) Fourth Amendment claims for using excessive force both in deploying a police dog and in shooting Martin Figueroa; (2) a Fourteenth Amendment claim for loss of familial companionship brought by Aurora Figueroa; (3) a wrongful death claim; (4) a negligence claim; (5) a battery claim; and (6) a claim for negligent infliction of emotional distress brought by Aurora and Lizette

1

Figueroa.  (Doc. No. 41.)  Defendants filed a motion for summary judgment on October 21, 2016.  (Doc. No. 60.)  Plaintiffs filed an opposition to that motion on November 29, 2016.  (Doc. No. 71.)  Defendants filed a reply on December 13, 2016.  (Doc. No. 80.)[1]  The motion came on for hearing on December 20, 2016, with attorneys Alexandria Amezcua and Christopher Wiener appearing on behalf of plaintiffs, and attorney Bruce Praet appearing on behalf of defendants.  After hearing oral argument the motion was taken under submission.  For the reasons set forth below, defendants' motion for summary judgment will be denied.

## FACTUAL BACKGROUND

The evidence before the court on summary judgment is as follows.  At approximately 7:00 p.m. on the evening of May 20, 2014, the Fresno Police Department responded to a call from Lizette Figueroa, the sister of decedent Martin Figueroa.  Martin was at the house of his mother, Aurora Figueroa, and was acting strangely.  Lizette advised police officers that Martin was high on drugs[2] and was "crazy."  (Doc. No. 81-2 at 6.)  Lizette told police that she and Aurora were "frightened for our lives," though the parties appear to dispute whether their primary concern was for their own safety or for Martin's.  (*Compare* Doc. No. 60-3 at 4 *with* Doc. No. 74-1 at 7.)  Lizette told the 911 operator that when Martin got high, "he gets violent."  (Doc. No. 60-3 at 5.)

Police arrived a few minutes after the initial 911 call was made.  Defendant Alvarez was one of the initial responding officers, and arrived with Officers Gerardo Grimaldo and Bernard Garcia as back-up.  (Doc. No. 60.)  The parties dispute what defendant Alvarez learned about

---

[1] In their reply, defendants suggest that, because plaintiffs did not specifically cite the evidence they supplied in their "Opposition to the Separate Statement of Facts," the court *must* treat these facts as undisputed.  (*See* Doc. No. 80 at 10.)  Defendants cite a decision in "*Martin v. San Francisco*" for this proposition.  (*Id.*)  It appears the intended citation was to the decision in *Martin v. City of South Lake Tahoe*, No. Civ. S-05-2167 FCD KJM, 2007 WL 2176372 (E.D. Cal. July 26, 2007).  In that case, the court stated in a footnote, "Plaintiff 'disputes' this fact, but the evidence cited to does not contradict defendants' evidence.  Where there are other such 'disputed' facts without citation to evidence that raises a triable issue, the court will treat such facts as undisputed."  *Id.* at *2 n.4.  Here, in contrast, plaintiffs have come forward with evidence on summary judgment and this court will consider it despite defendants' contention that it was not properly cited.

[2] Toxicology tests indicated that Martin had methamphetamine in his system.  (*See* Doc. No. 60-8.)

2

Martin in advance of arriving at the address:  defendants assert Alvarez knew Martin was a Bulldog gang member with active parole conditions prohibiting the use of drugs, while plaintiffs claim Alvarez merely knew Martin was on parole in connection with a "gang enhancement." (Doc. No. 73-1 at 2.)  The police officers made contact with Martin, who was inside the house and refused to come out, apparently shouting at least one obscenity at the police officers.  (*Id.* at 2.)  At some point, defendant Clement, a K-9 officer, arrived on the scene and Martin was advised that if he continued to refuse to come out of the house, a dog could be sent in and might bite him.

The parties dispute exactly how much time elapsed before the officers made the decision to enter the home.  Plaintiffs suggest it may have been as few as twenty-four minutes, and defendants take the position that it was up to forty-five minutes.  (*Id.* at 2–3.)  Regardless of the exact amount of time that elapsed, within an hour of arriving, the supervisor on scene—Sergeant John Romo—formulated a plan to send the police dog into the residence on an extended leash to find Martin.  (*Id.* at 3.)  Lizette provided a key to the officers at their request.  (*Id.* at 2.)  During this time, defendant Alvarez apparently contacted Martin's parole officer Latisha Wallace.  (*Id.* at 3.)  The parties also disagree as to what exactly Wallace told the officers:  defendants assert Wallace authorized a felony parole hold, whereas plaintiffs point to the fact that, during the department's internal investigation Wallace recalled she had told the officers she would only authorize such a hold *after* Martin was arrested and it was determined he was actually in violation of the terms of his parole because he was under the influence of drugs.  (*Compare* 60-5 at 3 (deposition of Wallace) *with* Doc. No. 81-2 at 14 ("According to Wallace, she did not authorize the parole hold prior to the officers making entry into the residence.").)

In any event, shortly after releasing the police dog into the house, the officers entered the residence at 7:38 p.m. and found Martin in a rear bedroom with the police dog biting his left hand. (Doc. No. 73-1 at 4.)[3]  Beyond that, the parties disagree on what the officers found upon entering the rear bedroom.  Defendants assert that Officers Clement and Alvarez saw Martin with a knife in his right hand and that they both told him to drop the knife.  (Doc. No. 73-1 at 4.)

---

[3] The police dog was apparently a Belgian Malinois, weighing between 60 to 65 pounds.  (Doc. No. 81-8 at 4.)  Decedent Martin was 5'8" tall and weighed 132 pounds.  (Doc. No. 74-17 at 5.)

3

According to defendants, Martin did not drop the knife and instead raised it above his head, at which point, fearing for their safety, both officers shot him. (*Id.* at 5.) Martin was between three and eight feet away from Officer Clement, according to Officer Alvarez. (Doc. No. 60-4 at 9.) Approximately one minute transpired between the officers entering the house and shots being fired at 7:39 p.m. (Doc. No. 73-1 at 4.)

Plaintiffs dispute that Martin held or wielded a knife. They note that a small steak knife was found under a shoe in the rear bedroom in which Martin was shot, but that no fingerprints were found on the knife and DNA testing did not conclusively link Martin to that knife (though it could not exclude him, either). (*Id.* at 4–5.) Further, plaintiffs have come forward on summary judgment with a photograph of the crime scene depicting the steak knife on the floor amidst numerous other objects, and partially covered by a flip-flop. (Doc. No. 74-8.)

After Martin was shot, defendant Clement removed his dog, and CPR and first aid were administered to Martin. (*Id.* at 5.) However, Martin died from the gunshot wounds. (*Id.*) An autopsy indicated that Martin was shot once below his left armpit and three times in his back, and had dog bites on both his left and right arms. (Doc. No. 74-17 at 6–8.)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at

trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.). *See also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**ANALYSIS**

*1.     Excessive Force Claims*

Defendants argue that summary judgment is appropriate here because the shooting of Martin was objectively reasonable as a matter of law in light of the evidence before the court on summary judgment. (Doc. No. 60 at 9–15.)

It is important to note at the outset that plaintiffs here are asserting two separate excessive force claims under the Fourth Amendment. In their FAC, plaintiffs allege that the defendant officers used excessive force when they allowed a police dog to "repeatedly bite and injure Mr. Figueroa." (Doc. No. 41 at ¶ 26.) Plaintiffs allege that subsequent to the attack by the police dog, the officers again violated Martin's Fourth Amendment rights by shooting him. (*Id.*) The FAC alleges that, even if the defendants could establish that Martin threatened the police with a knife and that their shooting of him was thereby justified, defendant's liability for his death may be predicated on the "unreasonable escalation of the situation" following the independent Fourth

/////

/////

/////

6

Amendment violation for using the police dog. (*Id.*)[4] For the reasons discussed below, none of plaintiffs' excessive force claims are susceptible to resolution by way of summary judgment.

A claim that a law enforcement officer used excessive force during the course of an arrest is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985); *Smith v. Clark County*, 828 F.3d 910, 920 (9th Cir. 2016). Under this standard, "'[t]he force which [i]s applied must be balanced against the need for that force: it is the need for force which is at the heart of the *Graham* factors.'" *Liston v. County of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997) (quoting *Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994)); *see also Headwaters Forest Defense v. County of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002). Thus, in light of the facts and circumstances surrounding a law enforcement officer's actions, courts "must balance the nature of the harm and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010) (citations and internal quotations omitted); *see*

---

[4] This allegation in the FAC appears to invoke the holding in *Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002). There, the Ninth Circuit held that when an officer reacts defensively to aggression by a suspect, the officer may still be held liable for the use of justifiable force if the officer "intentionally or recklessly provoke[d] a violent confrontation, if the provocation is an independent Fourth Amendment violation." 292 F.3d at 1189 (emphasis added). In *Billington*, police officers had entered a suspect's house without an arrest warrant, investigating a relatively trivial and non-violent offense. *Id*. The entry into the house itself violated the Fourth Amendment. *Id*. The suspect fired on the officers, prompting the officers to fire back in self-defense. *Id*. Though the defensive shots were justified, the officers were still subject to liability because their entrance into the house was unconstitutional. *Id*. The court concluded that under those circumstances, the only remaining issue was the scope of liability, "or what harms the constitutional violation proximately caused." *Id*. Defendants suggest that *Billington* stands for the proposition that "even arguably bad tactics will not give rise to a Fourth Amendment claim." (Doc. No. 60 at 17.) This would appear to be a misreading of the holding in *Billington*. *See Mendez v. County of Los Angeles,* 815 F.3d 1178, 1193 (9th Cir. 2016) ("Here, the district court held that because the officers violated the Fourth Amendment by searching the shack without a warrant, which proximately caused the plaintiffs' injuries, liability was proper. We agree."); *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 538–39 (9th Cir. 2010) ("If an officer intentionally or recklessly violates a suspect's constitutional rights, then the violation may be a provocation creating a situation in which force was necessary and such force would have been legal but for the initial violation.") However, since the court finds neither of plaintiffs' excessive use of force claims to be suitable for resolution on summary judgment, it need not reach this issue now.

*also Scott v. Harris*, 550 U.S. 372, 383–84 (2007); *Smith*, 828 F.3d at 920; *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *Deorle v. Rutherford,* 272 F.3d 1272, 1280 (9th Cir. 2001); *Liston*, 120 F.3d at 976.  "Force is excessive when it is greater than is reasonable under the circumstances."  *Santos*, 287 F.3d at 854 (citing *Graham*, 490 U.S. 386).  Accordingly,

> [a]lthough it is undoubtedly true that police officers are often forced to make split-second judgments, and that therefore not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers is a violation of the Fourth Amendment, it is equally true that even where some force is justified, the amount actually used may be excessive.

*Id.* at 853 (citations and internal quotations omitted); *see also Barnard v. Theobald*, 721 F.3d 1069, 1076 (9th Cir. 2013); *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007).

A non-exhaustive list of the circumstances considered in determining whether excessive force was used includes:  (1) the severity of the crime alleged to be committed or in the process of commission; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether the suspect is actively resisting arrest or attempting to flee.  *Graham*, 490 U.S. at 396; *Smith*, 828 F.3d 920; *Lal v. California*, 746 F.3d 1112, 1117 (9th Cir. 2014); *Billington v. Smith*, 292 F.3d 1177, 1184 (9th Cir. 2002).  A reasonableness inquiry must be objective and "without regard to the officer's good or bad motivations or intentions."  *Billington*, 292 F.3d at 1184.  Further, reasonableness is to be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and should allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id.*  Officers are not required to "'avail themselves of the least intrusive means of responding' and need only act 'within that range of conduct we identify as reasonable.'"  *Id.* at 1188–89 (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).

The Ninth Circuit has issued the following admonishment with respect to the use of summary judgment in cases involving claims of excessive use of force:

> Under the Fourth Amendment, law enforcement may use "objectively reasonable" force to carry out such seizures; as in the unlawful arrest analysis, this objective reasonableness is determined

> by an assessment of the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Because this inquiry is inherently fact specific, the "determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." *Headwaters Forest Def. v. County of Humboldt*, 240 F.3d 1185, 1205–06 (9th Cir. 2000), *cert. granted, judgment vacated on other grounds*, 534 U.S. 801 (2001); *see also Torres [v. City of Madera]*, 648 F.3d [1119,] 1125 [(9th Cir. 2011)] (summary judgment "in excessive force cases should be granted sparingly"); *Liston v. County of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (finding that excessive force is "ordinarily a question of fact for the jury"); *Chew v. Gates*, 27 F.3d 1432, 1443 (9th Cir. 1994) ("[W]hether a particular use of force was reasonable is rarely determinable as a matter of law.").

*Green v. City and County of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014). Indeed, in an excessive force case in which the only witnesses to the alleged application of unconstitutional force were police officers and a decedent, the Ninth Circuit has held that even "a significant inconsistency in the officers' testimony [is] sufficient to present a genuine dispute of material fact." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 791 (9th Cir. 2014). Put another way, only where a rational jury drawing all reasonable inferences in favor of the non-moving party could not reasonably conclude the officers' force was excessive is summary judgment appropriate on such a claim. *See Santos*, 287 F.3d at 856 (noting that "'[b]ecause questions of reasonableness are not well-suited to precise legal determination,' the jury must be allowed to assess whether the force used by the officers was excessive") (quoting *Chew*, 27 F.3d at 1440).

Here, defendants have failed to establish that they are entitled to summary judgment in their favor on the excessive use of force claim based upon the shooting of the decedent.[5] While

---

[5] It is unclear whether defendants intended to seek summary judgment with respect to plaintiffs' excessive force claim based on use of a police dog. Defendants' argument, both in their briefs and at hearing, was directed solely at the reasonableness of the officers' actions in shooting Martin. In any event, an excessive force claim based on deployment of a police dog on an unarmed suspect also cannot typically be decided on summary judgment. *See Chew v. Gates*, 27 F.3d 1432, 1440–43 (9th Cir. 1994). Defendants state the dog was used because "Martin was an uncooperative parolee wanted for a felony parole violation." (Doc. No. 60 at 7.) Whether a parole hold had been authorized is disputed here. (*Compare* Doc. No. 60-5 at 3 *with* Doc. No. 81-2.) Because material facts remain in dispute, the motion for summary judgment on this aspect of the excessive use of force claim would be denied in any event. Moreover, as noted above, the Ninth Circuit has held that an officer may still be held liable for the use of justifiable force if the officer "*intentionally or recklessly provoke[d] a violent confrontation*, if the provocation is an independent Fourth Amendment violation." *Billington*, 292 F.3d at 1189 (emphasis added).

much of the evidence involved in this shooting is undisputed, there are a number of disputed issues of clearly material fact. For instance, the parties dispute whether Martin wielded a knife at police officers, and both sides have differing evidence probative of that issue. Defendants point to the deposition testimony of defendants Alvarez and Clement that Martin brandished a knife at them. (*See* Doc. No. 60-4 at 10; Doc. No. 60-6 at 10–11.) Plaintiffs submit laboratory results showing there is no conclusive DNA evidence showing Martin even touched the knife and that the chance the DNA found would match a random Hispanic individual was approximately one in six, which undercuts the police officers' testimony. (Doc. No. 74-9.) Additionally, plaintiffs' point to the evidence that Martin's fingerprints were not found on the knife. (Doc. No. 74-10.) This alone is a factual dispute requiring the weighing of evidence and the assessment of the credibility of the witnesses, making summary judgment inappropriate. *See T.W. Elec. Serv.*, 809 F.2d at 631. A reasonable jury could easily find that the absence of any DNA or fingerprint evidence on a small steak knife found on the floor of a cluttered bedroom was strong evidence the knife had not been wielded by a violent perpetrator, but instead merely happened to be in the room. Likewise, based upon the evidence before the court on summary judgment, including the evidence that the decedent was shot once below his left armpit and three times in his back, a rational jury could find that the force used by the officers was excessive even if the decedent had a knife in his hand. This is especially the case given the evidence that the decedent had dog bites on both his left and right arms and the apparently undisputed fact that the sixty pound police dog was engaged with the decedent at the time of the shooting.

      There are other disputed issues of fact, including the amount of time police waited prior to entering the residence, whether a felony parole hold had been authorized prior to police entrance, and what police knew about Martin prior to entering the residence. Because the determination of all of these facts would undoubtedly influence a factfinder's analysis of the "totality of the circumstances," summary judgment is inappropriate with respect to any aspect of plaintiffs' excessive use of force claim. *See Green*, 751 F.3d at 1049; *Walls*, 653 F.3d at 966.

/////

/////

2.      *Fourteenth Amendment Claim*

Defendants argue that summary judgment should be granted in their favor on the second cause of action because Aurora Figueroa cannot establish that the officers acted with the "purpose to harm" Martin.[6] (Doc. No. 60 at 15–16.) Plaintiffs do not argue they have come forward with sufficient evidence to create a triable issue of fact as to whether the defendant officers had a "purpose to harm," but instead assert that analysis of this claim must employ the lower standard of "deliberate indifference." (Doc. No. 73 at 21.) In their briefs, both parties rely on the decision in *Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008) in support of the application of the standard they advance.

Generally speaking, "[t]he Ninth Circuit recognizes that a parent has a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her child." *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991); *see also Porter*, 546 F.3d at 1136. This substantive due process claim requires a plaintiff to show that the executive abuse of power that provides the basis for the action "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998); *Porter*, 546 F.3d at 1137. The question in *Porter*, and the one presented by the parties here, was "whether the shocks the conscience standard is met by showing that [an officer] acted with *deliberate indifference* or requires a more demanding showing that he acted with a *purpose to harm* [the decedent] for reasons unrelated to legitimate law enforcement objectives." *Porter*, 546 F.3d at 1137. The critical consideration in differentiating these two standards is "whether the circumstances are such that actual deliberation is practical." *Id.* (quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998)) (internal quotations omitted); *see also Gonzalez*, 747 F.2d at 747. The deliberate indifference standard is "sensibly employed only when actual deliberation is practical," whereas

---

[6] At the hearing on the pending motion, defendants suggested that the question was not whether they had either a "purpose to harm" or a "deliberate indifference" toward the decedent, Martin Figueroa, but rather toward the plaintiff, Aurora Figueroa. This argument is misplaced. *See Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) ("[V]iewing the facts in the light most favorable to [the plaintiffs, decedent's parents], they must demonstrate that [the officer who shot decedent] acted with a purpose to harm [the decedent] that was unrelated to legitimate law enforcement objectives.").

11

the purpose to harm showing is appropriate for "rapidly escalating" situations. *Porter*, 546 F.3d at 1137–38 (quoting *Lewis*, 523 U.S. at 851). The prototypical "rapidly escalating" situations are high-speed police chases and prison riots, though situations such as "a gun fight in a crowded parking lot" would also suffice. *Id.* at 1137–39.

There is no bright line differentiating between rapidly escalating situations and those with sufficient time to allow for actual deliberation for purposes of determining which legal standard applies. *See id.* at 1139 ("'[D]eliberation' for purposes of the shocks the conscience test is not so literal a concept."). This has sometimes been treated by district courts as a question of fact to present to the jury, if disputed, and other times as a preliminary question of law to be decided by the court. *Compare Ledesma v. Kern County*, No. 1:14-cv-01634-DAD-JLT, 2016 WL 6666900, at *15–16 (E.D. Cal. Nov. 10, 2016); *Losee v. City of Chico*, No. 2:14-cv-02199-KJM-CMK, 2016 WL 4096444, at *10–11 (E.D. Cal. Aug. 1, 2016) (finding actual deliberation was not practicable only after "construing the evidence and drawing all reasonable inferences in [plaintiff's] favor"); *Garlick v. County of Kern*, 167 F. Supp. 3d 1117, 1165–66 (E.D. Cal. 2016) (proceeding to evaluate whether "the undisputed evidence . . . establish[es] as a matter of law which standard applies") *with McGowan v. County of Kern*, No. 1:15-cv-01365-DAD-SKO, 2016 WL 2770663, at *3–5 (E.D. Cal. May 13, 2016) (deciding which standard applies as a matter of law); *Atkinson v. County of Tulare*, 790 F. Supp. 2d 1188, 1208 (E.D. Cal. 2011) (same).

The court concludes that defendants have not established they are entitled to summary judgment in their favor as to plaintiff Aurora Figueroa's Fourteenth Amendment due process claim. The constitutional right alleged to have been violated is a broadly articulated one. *See Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985) ("[A] parent has a constitutionally protected liberty interest in the companionship and society of his or her child. The state's interference with that liberty interest without due process of law is remediable under section 1983."). Here, plaintiffs allege that the conduct leading to the deprivation of Aurora Figueroa's liberty interest was more than the shooting of Martin by the defendant officers. Rather, plaintiffs have alleged that defendants acted with deliberate indifference by sending the K-9 into the home knowing it would attack Martin, entering the home unnecessarily, and doing so

1  with guns drawn, all in addition to the actual shooting. (Doc. No. 41 at ¶ 31.) Further, it is
2  undisputed that at least twenty minutes passed between the officers' arrival on the scene and their
3  deployment of the police dog. Defendants themselves have presented evidence on summary
4  judgment that the decision to enter the home was made because of concerns regarding workflow
5  and the backing up of other calls for police rather than the exigency of the situation. Specifically,
6  defendant Alvarez testified at his deposition that the officers made the decision to enter the
7  residence in an effort to capture Martin when they did because there were several "calls for
8  service pending," and their area was "a pretty busy area." (*See* Doc. No. 60-4 at 8.) Based on
9  this evidence, a reasonable jury could conclude both that actual deliberation was not only
10 "practical," but in fact took place. *See Porter*, 546 F.3d at 1137–39; *see also Kosakoff v. City of*
11 *San Diego*, No. 08-cv-1819-IEG (NLS), 2010 WL 1759455, at *11–12 (finding a jury question
12 presented by a Fourteenth Amendment claim stemming from a car chase that had been called off
13 by police and had de-escalated prior to the attempted apprehension and subsequent shooting of
14 the decedent). Construing the evidence in favor of the plaintiffs, a reasonable jury could also
15 conclude that the decision to escalate a potentially volatile situation simply in order to be freed to
16 attend to other calls was a deliberately indifferent action by the officers that "shocks the
17 conscience." *See Porter*, 546 F.3d at 1137; *Kosakoff*, 2010 WL 1759455, at *11–12. *See also*
18 *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (requiring an official to "both be aware of facts
19 from which the inference could be drawn that a substantial risk of serious harm exists, and . . .
20 also draw the inference" in order to find deliberate indifference); *Solis v. County of Los Angeles*,
21 514 F.3d 946, 957 (9th Cir. 2008) ("Deliberate indifference occurs when 'the official acted or
22 failed to act despite his knowledge of a substantial risk of serious harm.'") (quoting *Farmer*, 511
23 U.S. at 841).
24 /////
25 /////
26 /////
27 /////
28 /////

### 3. Qualified Immunity

Defendants argue that they are entitled to summary judgment on qualified immunity grounds with respect to plaintiffs' Fourth Amendment claim[7] on both prongs of the typical test, because plaintiffs have failed to present evidence of a constitutional violation and because the law governing their conduct was not clearly established. (Doc. No. 60 at 18–19.) Defendants suggest the appropriate question with respect to the second prong of that test here is whether it was clearly established that an officer would violate the Fourth Amendment by shooting "a defiant gang member who was wanted for a felony parole violation when he elected to brandish a knife at arresting officers." (Doc. No. 60 at 20.) Plaintiffs suggest the proper framing of the question is whether it was clearly established that an officer would violate the Fourth Amendment by applying deadly force in the absence of a threat to the officer or others. (Doc. No. 73 at 23.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Hughes v. Kinsela*, 841 F.3d 1081, 1088 (9th Cir. 2016); *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The United States Supreme Court has held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In this

---

[7] Though defendants seek "qualified immunity with respect to all federal claims," they have presented only argument and authority concerning plaintiffs' excessive use of force claim based upon the shooting of the decedent and have not addressed either the use of force claim based on the deployment of the police dog or the Fourteenth Amendment claim. (*See, e.g.*, Doc. No. 60 at 19) ("While Plaintiffs have made general assertions that Defendant officers could have waited or even used some sort of lesser alternatives to deadly force, the clearly established law in the Ninth Circuit holds that no such requirement is imposed under the Fourth Amendment."). Accordingly, the court will not address the question of qualified immunity with respect to those claims.

regard, if a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.  Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity at that point without determining whether the allegations in fact make out a statutory or constitutional violation. *Pearson*, 555 U.S. 236–42.  As already discussed above, there is sufficient evidence before the court on summary judgment for a reasonable trier of fact to return a verdict in plaintiffs' favor on the excessive use of force claim based on the shooting of the decedent.  Accordingly, the court must only determine whether the law with respect to that excessive force claim was clearly established at the time of this incident in May 2014.

"A Government official's conduct violate[s] clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *A.D. v. California Highway Patrol*, 712 F.3d 446, 454-55 (9th Cir. 2013).[8]  In this regard, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741; *see also Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional.") (quoting *Saucier*, 533 U.S. at 202).  The inquiry must be undertaken in light of the specific context of the particular case. *Saucier*, 533 U.S. at 201.

/////

---

[8] The court appreciates defense counsel's supplemental submission bringing to its attention the recent Supreme Court decision in *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548 (2017). (Doc. No. 91.) However, that case is inapposite.  There, one of two brothers in the house fired two shotgun blasts at officers out of a door when the other brother leaned out a window and pointed a handgun at the officers. *See* 137 S. Ct. at 550.  The brother leaning out of the window pointing a gun at officers was shot and killed. *Id.*  Here, in contrast, plaintiffs claim that the defendant officers shot an unarmed man in the back while the man was being restrained by a police dog.  As noted above, there is some evidence from which a reasonable jury could so conclude.

15

Here, construing the evidence before the court on summary judgment in favor of the plaintiffs, a reasonable officer would have understood that applying deadly force in this situation was unconstitutional. Both officers indicated in their depositions that his alleged wielding of a knife was the only thing rendering Martin a threat, and their application of deadly force was premised on his possession of the knife. (Doc. No. 60-4 at 10–11; Doc. No. 60-6 at 11.) Plaintiffs, however, have presented evidence suggesting Martin did not have or wield a knife at the defendant officers. (Doc. No. 74-9.) In May of 2014 it was clearly well-established that the use of deadly force on an unarmed suspect who was not posing a danger to officers was conduct violative of the Fourth Amendment. *See, e.g.*, *Brosseau v. Haugen*, 543 U.S. 194, 197–98 (2004) ("Specifically with regard to deadly force, we explained in [*Tennessee v.*] *Garner*[, 471 U.S. 1 (1985)] that it is unreasonable for an officer to 'seize an unarmed, nondangerous suspect by shooting him dead.'"); *Garner*, 471 U.S. at 3 (deadly force may not be used on an unarmed suspect unless necessary to prevent the escape and probable cause exists that suspect poses a significant threat); *Torres v. City of Madera*, 648 F.3d 1119, 1128 (9th Cir. 2011) ("Officer Noriega applied deadly force to an unarmed, nondangerous suspect, and there could be no reasonable mistake that this use of force was proscribed by law.").

Therefore, defendants' motion for summary judgment in their favor on qualified immunity grounds will be denied.

    *4.*    Monell *Claim*

The only argument defendants raise concerning plaintiffs' claims against the City of Fresno is that, since there is no individual liability on the part of the officers, there can be no liability on the part of the city under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (Doc. No. 60 at 21–22.) As set forth above, the court has determined that based upon the evidence presented on summary judgment, triable questions of fact exist with respect to the liability of the defendant officer. Therefore, defendants' sole argument for granting summary judgment on the city's *Monell* liability is unavailing.

/////

/////

*5.   State Law Claims*

Defendants also summarily argue that since summary judgment in their favor should be granted with respect to plaintiffs' § 1983 excessive force claims, it is also appropriate with respect to plaintiffs' state law tort claims. (Doc. No. 60 at 22–23.) Since the court has concluded that defendants' motion for summary judgment on plaintiffs' § 1983 claims must be denied, defendants' argument with respect to plaintiffs' state law claims is unpersuasive. Accordingly, the court will also deny defendants' motion for summary judgment as to plaintiffs' state law claims.

## CONCLUSION

For all of the reasons explained above, defendants' motion for summary judgment (Doc. No. 60) is denied.

IT IS SO ORDERED.

Dated:   **February 10, 2017**

_____
UNITED STATES DISTRICT JUDGE